**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**ELIJAH LEE HAWTHORNE, III**                                **CIVIL ACTION**

**VERSUS**                                                   **NO. 07-8681**

**'WARDEN' STEWARD MURPHY**                                  **SECTION: "F"(3)**

### ORDER AND REASONS

Plaintiff, Elijah Lee Hawthorne, III, a state pretrial detainee, filed this *pro se* complaint against Warden Stuart Murphy.[1] In this lawsuit, plaintiff claimed that he was confined in lockdown by defendant in retaliation for filing a lawsuit. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge.[2]

Defendant filed a motion for summary judgment pursuant to Fed.R.Civ.P. 56,[3] which plaintiff opposes.[4] In response to an order of this Court, both parties have since supplemented their filings with additional evidence.[5]

---

[1] In the complaint, plaintiff identified the defendant as *Steward* Murphy.

[2] Rec. Doc. 11.

[3] Rec. Doc. 26; see also Rec. Doc. 36.

[4] Rec. Docs. 30 and 37.

[5] Rec. Docs. 39 and 44-46.

In reviewing such a motion, the Court may grant summary judgment when no genuine issue of material fact exists and the mover is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). "Procedurally, the party moving for summary judgment bears the initial burden of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." Taita Chemical Co., Ltd. v. Westlake Styrene Corp., 246 F.3d 377, 385 (5th Cir. 2001) (quotation marks and brackets omitted). The party opposing summary judgment must then "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) (quoting Fed.R.Civ.P. 56); see also Provident Life and Accident Ins. Co. v. Goel, 274 F.3d 984, 991 (5th Cir. 2001). Conclusory statements, speculation, and unsubstantiated assertions are not competent summary judgment evidence and will not suffice to defeat a properly supported motion for summary judgment. Ragas v. Tennessee Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998); Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415, 1429 (5th Cir. 1996).

The entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. The United States Supreme Court explained that, "[i]n such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 322-23 (quotation marks omitted).

In this lawsuit, plaintiff alleges that he was confined in lockdown on the order of Warden Stuart Murphy in retaliation for filing a lawsuit. Defendant concedes that plaintiff is in lockdown; however, defendant contends that plaintiff is in lockdown for reasons of prison security and discipline.

In support of the original motion for summary judgment, defendant produced considerable evidence of plaintiff's alleged dangerousness and history of disciplinary problems. That evidence showed that plaintiff is detained in the Tangipahoa Parish Jail on a charge of first-degree murder.[6] During his detention, plaintiff allegedly raped a fellow inmate on August 24, 2007, and was in fact arrested for aggravated rape.[7] As a result, on August 28, 2007, defendant placed the following note in plaintiff's prison record:

> On this date inmate Hawthorne was charged with the AGGRAVATED RAPE of a fellow inmate. Due to this incident, as well as the fact that Hawthorne has previously been convicted of the RAPE of another inmate, he will be placed on Administrative Lockdown until further notice. This action will be taken to protect the lives of fellow inmates as well as prison personnel.[8]

In another note to the file dated September 18, 2007, defendant stated:

> On this date Inmate Hawthorne requested to meet with me. During the meeting he stated that he and another inmate had planned to escape through the roof of the classroom (area is secure and escape would not be possible). At some point Hawthorne believed that the other inmate would not include him in the escape so he elected to disclose the plan to jail administrators.

---

[6] Rec. Doc. 26, Exhibit A.

[7] According to the criminal records, plaintiff "without the consent of Victim ... force[d] him to the floor of their cell, held a razor blade to his throat, and performed anal intercourse on victim." Rec. Doc. 26, Exhibit B.

[8] Rec. Doc. 26, Exhibit D.

> While explaining his plan, Hawthorne also stated that he had nothing to lose and he believed that he would spend the rest of life in jail. He vowed to escape and warned us to be cautious when dealing with him.
> Hawthorne will remain on Administrative Lockdown in order to protect the lives of employees, inmates, and general public.[9]

In another note to plaintiff's file from October 15, 2007,[10] defendant stated:

> Inmate continues to be a threat to other inmates and the staff. Hawthorne is now beginning to make various threats toward staff members. He will continue in Administrative lockdown.[11]

Plaintiff thereafter filed the instant complaint, dated October 26, 2007, stating that, at that point, he had been kept in lockdown for four months in retaliation for filing a federal civil rights action against Murphy in 2006.

The United States Fifth Circuit Court of Appeals has noted that such retaliation claims must be "'regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions.'" See Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995) (quoting Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994)). Further, the Fifth Circuit has held:

> To prevail on a claim of retaliation, a prisoner must establish (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation. Causation requires a showing that but for the retaliatory motive the complained of incident would not have occurred.

---

[9] Rec. Doc. 26, Exhibit F.

[10] That note is misdated as having been written on October 15, *2008*.

[11] Rec. Doc. 26, Exhibit G. Plaintiff currently remains in lockdown purportedly based on these and other subsequent disciplinary infractions, including possession of contraband, exposing his genitalia to female inmates, and sexually propositioning a male guard. Rec. Doc. 26, Exhibits H - N.

McDonald v. Steward, 132 F.3d 225, 231 (5th Cir. 1998) (internal quotation marks and ellipsis omitted).

Regarding the first prong of that inquiry, it is evident that plaintiff's retaliation claim implicates a specific constitutional right, i.e. the right of access to the courts. It would clearly be illegal for defendant to confine plaintiff in lockdown in retaliation for exercising that right. See Woods, 60 F.3d at 1164 ("The law of this circuit is clearly established ... that a prison official may not retaliate against or harass an inmate for exercising the right of access to the courts ....").

That said, it is equally clear that plaintiff's claim falters at the remaining prongs of the inquiry. Although noting that a prisoner faces a "significant burden" in proving that the defendant's action stemmed from a retaliatory motivation, the Fifth Circuit expressly held that "[m]ere conclusionary allegations of retaliation will not withstand a summary judgment challenge." Id. The Court of Appeals further held: "The inmate *must* produce direct evidence of motivation or, the more probable scenario, allege a chronology of events from which retaliation may plausibly be inferred." Id. (quotation marks omitted) (emphasis added). Obviously, it would be a rare case in which a prisoner would have *direct evidence* of a retaliatory motivation. Therefore, it is not surprising that plaintiff lacks such evidence in this case. However, because such evidence is lacking, plaintiff must be able to show that an inherently suspect chronology of events exists to support his retaliation claim. He makes no such showing in this case.

Plaintiff claims that he was placed in lockdown by defendant in retaliation for filing Civil Action No. 06-2164 in this Court on or about May 1, 2006.[12] On July 20, 2006, that lawsuit was dismissed by the Court *sua sponte* pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1). Elijah Lee Hawthorne, III v. Gary Beham, *et al.*, Civ. Action No. 06-2164 "C"(1) (E.D. La. July 20, 2006).[13] This Court would have no hesitation in finding a retaliatory motivation based on a chronology of events if defendant had placed plaintiff in lockdown soon after the lawsuit was filed and kept him there.[14] Tellingly, however, the records show otherwise. After the lawsuit was filed, plaintiff was placed in and, more importantly, *released from* lockdown on numerous occasions. The records reflect that plaintiff was in lockdown for only the following periods after the prior lawsuit was filed: June 13 - 23, 2006; July 26 - August 8, 2006; November 16 - December 7, 2006; December 21, 2006 - January 9, 2007; and August 22, 2007 - present. Obviously, prior to August 22, 2007, plaintiff's stays in lockdown were brief, separated by long periods of time in which he was housed in the general population, and constituted only a small percentage of the total time he was incarcerated. Of course, the Court acknowledges that, *since* August 22, 2007, plaintiff has been in lockdown continuously. However, the record clearly establishes that his current confinement in lockdown is based solely on concerns for prison safety, security, and discipline. This chronology

---

[12] The complaint was dated March 30, 2006, mailed in an enveloped metered on April 10, 2006, and filed by the Clerk of Court on May 1, 2006.

[13] "A court may take judicial notice of related proceedings and records in cases before the same court." MacMillan Bloedel Ltd. v. Flintkote Co., 760 F.2d 580, 587 (5th Cir. 1985).

[14] At the time the lawsuit was filed, defendant was already serving as the assistant warden of the Tangipahoa Parish Jail and, if he was so inclined, he had the power to place and keep plaintiff in lockdown at that time. Rec. Doc. 39, Exhibit A.

6

of events, when considered as a whole, simply does not support an inference that plaintiff was ever placed in lockdown based on a retaliatory motivation.

The Court notes that "summary judgment is appropriate in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." Little v. Liquid Air Corp., 37 F.3d 1069, 1075-76 (5th Cir. 1994) (emphasis deleted) (internal quotation marks omitted).  In light of the complete lack of any evidence whatsoever from which a retaliatory motivation can be demonstrated or inferred, as well as defendant's overwhelming evidence of other plausible justifications for plaintiff's current prolonged confinement in lockdown, the Court finds that a rational trier of fact simply could not conclude that plaintiff's confinement in lockdown stemmed from a retaliatory motivation.  Therefore, plaintiff cannot establish an essential element of his retaliation claim, and so defendant is entitled to judgment as a matter of law.

Accordingly,

**IT IS ORDERED** that defendant's motion for summary judgment is **GRANTED** and that plaintiff's retaliation claim is **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, this eighteenth day of June, 2008.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**